DocuSign Envelope ID: 53495{AA-EF5D-449C-86AC-5663680G0154

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement is entered into by and between Kimberly Deaton, both individually and on behalf of the Settlement Class (the "Class Representative"), and TransUnion LLC ("TransUnion"),[1] subject to approval by the Court.

## I.    RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances.

1.1    <u>The Pending Action</u>.  The Class Representative alleges that TransUnion failed to provide her and other consumers who disputed inaccurate information with the correct name and address of the business that furnished inaccurate information and conducted an investigation into the consumer's dispute, and to provide mandated disclosures in response to their disputes, allegedly in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i(a)(6).

1.2    <u>TransUnion's Denial of Liability</u>.  TransUnion has denied and continues to deny the Class Representative's allegations or that it has committed any violations of law, including, without limitation, the FCRA, engaged in any wrongful acts alleged in the First Amended Complaint, or otherwise incurred any liability, and has maintained that it has a number of meritorious defenses to the Class Representative's claims.  TransUnion nevertheless desires to settle the Action on the terms and conditions set forth herein, solely for the purpose of avoiding the further expense, inconvenience and distraction of burdensome and protracted litigation and to obtain the release, order and judgment contemplated by the Agreement.

1.3    <u>No Admission of Liability.</u>  The Class Representative and TransUnion agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed as an admission of liability by, or used against TransUnion for any purpose in any legal proceeding or as evidence of the truth of the Class Representative's allegations.  Further,

---

[1]    Section II below contains the definitions of capitalized terms utilized herein unless otherwise noted.

TransUnion is not estopped from challenging any such claim not yet asserted in the Action if the Settlement is not finally approved.

1.4     Settlement Through Mediation.    The Class Representative, Class Counsel, TransUnion and TransUnion's Counsel engaged in extensive, good faith arm's-length negotiations, including participating in a private mediation over the course of two (2) full days with an experienced neutral, Nancy Lesser.  It is the desire and intention of the Parties by entering into this Agreement to effect a full, complete and final Settlement and resolution of the Action.

1.5     Class Counsel's Investigation.   Class Counsel has concluded that this Settlement with TransUnion on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class based upon their investigation and discovery, and takes into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action and the substantial benefits to be received by the Settlement Class pursuant to this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to this Court's approval as required by Federal Rule of Civil Procedure 23, that the Action and each and every Released Claim shall be fully and finally settled, compromised, dismissed with prejudice, and shall be fully discharged and released as set forth herein.

## II.     DEFINITIONS

2.1     "Action" means the litigation captioned *Kimberly Deaton et al. v. Trans Union, LLC*, No. 2:20-cv-01380-AB (E.D. Pa.).

2.2      "Agreement" means this Stipulation and Agreement of Settlement, including all exhibits hereto.

2.3     "CAFA Notice" means the notice requirements set forth in 28 U.S.C. § 1715(b).

2.4     "Class Counsel" means Francis Mailman Soumilas, P.C. and SmithMarco, P.C.

2.5     "Class Notice" means the method of notice to the Settlement Class set forth in Section 7.2 below.

2.6     "Class Representative" means Kimberly Deaton.

2.7     "Court" means the United States District Court for the Eastern District of Pennsylvania, where the Action is pending.

2.8     "Credit Monitoring Subscription" means an internet-based, single-bureau, 18-month TransUnion credit monitoring subscription from the date of activation, which includes unlimited access to a TransUnion credit report that can be updated daily, unlimited online access to the VantageScore™ credit score from TransUnion, with analysis, that can be updated daily, online credit score trending, daily online TransUnion credit monitoring and email alerts when key changes occur, online access to TransUnion credit lock, online credit dispute access, unlimited toll-free access to credit specialists and unlimited online access to credit management and identity theft prevention resources located in the online education center.  This subscription is subject to the terms and conditions of similar credit monitoring subscriptions offered by TransUnion to paying consumers as of the time of activation with the exception of any arbitration provision as described in section 4.2.

2.9     "Effective Date" means five (5) business days after the Judgment has become Final.

2.10    "FCRA" means the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

2.11    "Fee Petition" means the motion for an award of attorneys' fees and reimbursement of litigation expenses filed as described in section 5.1.

2.12    "File" has the same meaning as set forth in 15 U.S.C. § 1681a(g).

2.13    "Final" means the date that the Judgment becomes final for all purposes, because either (a) no objection has been made to the Settlement and no party has sought to intervene, or (b) if any objection or motion to intervene was made, no appeal has been filed and thirty (30) days have lapsed since entry of the Judgment, and if a timely appeal has been filed, the appeal is finally resolved with no possibility of further appellate or other review, resulting in final judicial approval of the Settlement.

2.14    "Final Approval Order" means the order to be entered by the Court finally approving the Settlement and resolving all issues between the Parties, as provided for in Section 9.1, substantially in the form attached hereto as Exhibit B.

DocuSign Envelope ID: 53495144-EF5D-449C-86AC-5663680C0151

2.15    "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve the Settlement, enter Judgment and make such rulings contemplated by this Agreement.

2.16    "Judgment" means a final judgment and order of dismissal with prejudice to be entered by the Court concurrently with the Final Approval Order.

2.17    "Navient" means "Navient Education Loan Corporation" and all related entities, as discussed in paragraph 16-17 of Plaintiff's First Amended Complaint.

2.18    "Notice" means the notice informing Settlement Class Members of the Settlement, substantially in the form attached hereto as Exhibit C.

2.19    "Order Directing Notice to the Settlement Class" means an order to be entered by the Court, as provided for in Section 8.1, substantially in the form attached hereto as Exhibit A.

2.20    "Parties" means TransUnion and the Class Representative in the Action.

2.21    "Released Claims" means any and all claims under 15 U.S.C. § 1681i(a)(6) relating to TransUnion's failure to: (i) identify Navient as the entity that furnished information and conducted an investigation into the consumer's dispute of a United Student Aid Funds tradeline; and/or, (ii) provide notice that, upon request, TransUnion would provide the disputing consumer with the description of the procedure used to investigate the consumer's dispute and provide the name, address and telephone number of the furnisher contacted by TransUnion to undertake the investigation. "Released Claims" does not include any other claim for violation of 15 U.S.C. § 1681i or any of its subsections, including but not limited to a failure to conduct a reasonable reinvestigation.

2.22    "Released Parties" means jointly and severally, individually and collectively to TransUnion and each of its members, owners, shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all or substantially all of TransUnion's assets, stock, units or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, without limitation, holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, insurers, officers, directors,

employees, independent contractors, agents, advisors, attorneys, members, owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the above.

2.23    "Settlement" means this Agreement between the Class Representative, on behalf of herself and as representative of the Settlement Class  and TransUnion to settle, compromise and release all of the Released Parties from all of the Released Claims, fully, finally and forever.

2.24    "Settlement Administrator" means Continental DLX  or such other administrator as may be agreed to by the Parties for the purpose of giving notice to the Settlement Class of this Settlement and the Final Fairness Hearing as described in Section 7.2, subject to the Court's approval.

2.25    "Settlement Class" means all natural persons with an address in the United States and its Territories who, between March 20, 2018 and October 21, 2020 (i) disputed a tradeline with TransUnion; (ii) TransUnion responded by sending the person a reinvestigation letter that identified "United Student Aid Funds c/o Sallie Mae" as the furnisher of the disputed tradeline; (iii) where Navient was the furnisher; and (iv) the tradeline remained on the consumer's report.

2.26    "Settlement Class Member" means any individual within the Settlement Class who does not timely and validly request exclusion from the Settlement.

2.27    "Settlement Website" means the website dedicated to the Settlement, on which will be posted the Notice, this Agreement, contact information for the Settlement Administrator, contact information for Class Counsel, the process for obtaining a Subscription Code, the Fee Petition after it is filed, and any other material the Parties agree in writing to include.

2.28    "Subscription Code" means the alphanumeric code to be provided by TransUnion and distributed by the Settlement Administrator to each Settlement Class Member, solely for that Settlement Class Member's personal use, to activate a Credit Monitoring Subscription.

2.29    "TransUnion" means TransUnion LLC.

2.30    "TransUnion's Counsel" means Buchanan Ingersoll & Rooney PC.

DocuSign Envelope ID: 534951AA-EF5D-449C-86AC-5663680G0151

## III.   THE SETTLEMENT CLASS

3.1    <u>Certification of the Settlement Class</u>.  The Class Representative will file a motion pursuant to Fed. R. Civ. P. 23(e) requesting that the Court direct notice to the Settlement Class, and conditionally certify the Settlement Class described above, for settlement purposes only, and TransUnion will not oppose such motion.  The parties agree that the Court's certification of the Settlement Class is without prejudice to, or waiver of the rights of, TransUnion to contest certification of any other class proposed in any other proceeding.

## IV.   SETTLEMENT CONSIDERATION

4.1    <u>Practice Changes</u>.  As a direct result of the Action and reflecting an integral component of the relief provided to the Settlement Class through the Settlement, TransUnion has implemented changes to the practices challenged by the Action.  Specifically, TransUnion's reinvestigation response letter at issue in this litigation was used from March 20, 2018 through October 21, 2020, at which time the language at issue was revised to address the Class Representative's (i)(a)(6) claim.  Also, on May 14, 2020, in response to the Class Representative's suit, TransUnion updated its internal coding to change "c/o Sallie Mae" to "c/o Navient" in the address field for United Student Aid Funds.

4.2    <u>Credit Monitoring Subscriptions</u>.  All Settlement Class Members will be entitled to a Credit Monitoring Subscription, as set forth herein:

(a)    TransUnion will provide the Settlement Administrator with a sufficient number of Subscription Codes to be distributed to Settlement Class Members following Final Approval of the Settlement.  Subscription Codes will be activated upon Final Approval of the Settlement and will remain valid for one hundred twenty (120) days after activation.

(b)    To activate a Credit Monitoring Subscription, the Settlement Class Member must provide TransUnion with a valid Subscription Code and the Settlement Class Member's first name, last name, email address, phone number, date of birth, address, and last four digits of the Settlement Class Member's social security number.

(c)     To the extent Settlement Class Members are required to agree to any contract, agreement, or terms and conditions with TransUnion or any related entity in connection with the activation of a Credit Monitoring Subscription, the contract, agreement, and/or terms and conditions shall not include any arbitration provision(s). Any arbitration provision(s) included in any contract, agreement, or terms and conditions between Settlement Class Members and TransUnion or any related entity for purposes of the Credit Monitoring Subscription provided by this Agreement shall be null, void, and unenforceable.

(d)     If TransUnion reasonably believes that a Credit Monitoring Subscription is being used by someone other than a Settlement Class Member or is being used to engage in identity theft, invasion of privacy, violations of the federal Credit Repair Organizations Act, or fraud, including, without limitation, the kind of activity described under the "Credit Repair Scams" and "Identity Theft" sections of the Federal Trade Commission's website located at https://www.consumer.ftc.gov/ (or a similar Federal Trade Commission website or other publication), then TransUnion may initially decline to activate or may temporarily suspend the Credit Monitoring Subscription for a maximum of twenty (20) days pending its investigation of the suspected activity.  TransUnion will give notice to Class Counsel of such action within five (5) business days thereof along with the reason(s) for suspension.  If TransUnion files a motion with the Court and shows good cause, the Court may order an extension of the period for which TransUnion may decline to activate or temporarily suspend a Credit Monitoring Subscription for a period determined by the Court.  The Parties agree to cooperate to have any such motion pursuant to this Section heard and decided on an expedited basis.

## V.     ATTORNEYS' FEES AND COSTS AND INDIVIDUAL SETTLEMENT SERVICE AWARD TO CLASS REPRESENTATIVE

5.1     Subject to Court approval, Class Counsel intend to seek up to three hundred thousand dollars ($300,000.00) in attorneys' fees and litigation expenses, and an individual settlement and service award of up to nine thousand five hundred dollars ($9,500.00) for the Class Representative, in recognition of the broader general release she provides in section 6.2.  Any

motion(s) requesting approval of such amounts shall be filed no later than ten (10) days before the deadline for Class Members to submit objections to the Settlement, and will be posted on the Settlement Website.  The Class Representative and Class Counsel will not request attorneys' fees, litigation expenses or any individual settlement and/or service award in excess of the foregoing amounts, and TransUnion will not oppose Class Counsel's petition for fees, litigation expenses and an individual settlement and service award in the foregoing amounts.

5.2     Payment of attorneys' fees, litigation expenses and any individual settlement and service award shall occur on the later of seven (7) business days after the Effective Date or, if there is a challenge to attorneys' fees, litigation expenses and/or any individual settlement and service award that is not resolved prior to the Effective Date, seven (7) business days after such challenge is Final, and shall be directed to Class Counsel, SmithMarco, P.C., 55 West Monroe Street, Suite 1200, Chicago, IL 60603.

## VI.     <u>RELEASE AND DISMISSAL</u>

6.1     <u>Release of Released Claims by the Settlement Class</u>.  As of the Effective Date of the Settlement, the Class Representative and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, hereby remise, release, acquit, satisfy and forever discharge all of the Released Parties from all of the Released Claims.  The Class Representative and each Settlement Class Member understand and agree that this Agreement fully and finally releases and forever resolves the Released Claims, including claims that may be unknown, unanticipated and/or unsuspected.

6.2     In addition to the class-wide release set forth in section 6.1 above, the Class Representative, her respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on her behalf, hereby remises, releases, acquits, satisfies and forever discharges all of the Released Parties from all claims, known or unknown, that she may have against the Released Parties, up to the Effective Date of the Settlement.

6.3    <u>Dismissal</u>.  Entry of the Final Approval Order in the form attached hereto as Exhibit B shall operate to dismiss with prejudice all litigation by the Class Representative against TransUnion in any court, including without limitation, the Action.

### VII.    NOTICE AND SETTLEMENT ADMINISTRATION

7.1    <u>Costs of Notice And Administration</u>.  The costs of Class Notice and administration shall be paid by TransUnion.

7.2    <u>Class Notice</u>.  Notice to the Settlement Class shall be provided as follows:

(a)    The Notice will be mailed by the Settlement Administrator within fifteen (15) days after entry of the Order Directing Notice to the Settlement Class, to Settlement Class Members at their most recent address shown in TransUnion's reasonably accessible electronic records, as maintained in the ordinary course of business.  The Notice will direct the Settlement Class to the Settlement Website and will contain a toll-free telephone number for Settlement Class Members to contact the Settlement Administrator.

(b)    The Notice will also be posted on the Settlement Website promptly after entry of the Order Directing Notice to the Settlement Class.

(c)    The Settlement Administrator shall maintain a physical address and toll-free telephone number which the Settlement Class may write or call to obtain information about the Settlement.  An IVR or VRU system, and not live telephone operators, will be used by the Settlement Administrator.

7.3    <u>TransUnion to Administer Credit Monitoring Subscriptions</u>.  Except for delivering the Subscription Codes, the Settlement Administrator will not be involved in the activation or administration of the Credit Monitoring Subscriptions.

7.4    <u>CAFA Notice</u>.  All relevant approvals and court filing dates will be scheduled to ensure compliance with CAFA.  In conformity with its obligations under CAFA, TransUnion shall, within ten (10) days after the Agreement is filed with the Court, provide notice to the appropriate state official of each State in which a class member resides and the appropriate Federal official. The Class Representative will cooperate reasonably with TransUnion to ensure compliance so that

the releases described in Section 6.1 above are fully enforceable.  TransUnion reserves the right, at its own expense, to have the Settlement Administrator send such CAFA Notice as may be prepared by, or at the direction of, TransUnion.

## VIII.   ORDER DIRECTING NOTICE TO THE SETTLEMENT CLASS

8.1    Order Directing Notice to the Settlement Class.  The Class Representative will seek the Court's approval of this Agreement pursuant to Fed. R. Civ. P. 23(e) by filing an appropriate Motion to Direct Notice to the Settlement Class and seeking entry of the Order Directing Notice to the Settlement Class substantially in the form of Exhibit A hereto.  The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement.

8.2    Denial of Order Directing Notice to the Settlement Class.  If the Court fails for any reason to enter the Order Directing Notice to the Settlement Class substantially in the form attached hereto as Exhibit A, this Agreement shall terminate and be of no further force or effect without any further action by the Parties.  In the event that the Court fails to enter the Order Directing Notice to the Settlement Class substantially in the form attached hereto as Exhibit A, the Parties shall return to the status quo ante as of April 5, 2021, as if no Agreement had been negotiated or entered into.  Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of April 5, 2021 and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any individual within the proposed Settlement Class.

8.3    Opt-Outs/Requests for Exclusion from Settlement.

(a)    Requests for Exclusion.  Settlement Class Members shall be given the opportunity to request exclusion from the Settlement Class.  All requests by the individuals within the Settlement Class to be excluded must be in writing, sent to the Settlement Administrator and postmarked no later than forty-five (45) days after the date of the Notice, or sixty (60) days after the date of the Order Directing Notice to the Settlement Class, whichever is later.  To be valid, a request for exclusion must be personally signed and must include: (i) the individual's name,

address and telephone number; (ii) a sentence stating that he or she is a member in the Settlement Class; and (iii) a statement that he or she requests to be excluded from the Settlement. No individual within the Settlement Class, or any person acting on behalf of or in concert or participation with that individual, may exclude any other individual within the Settlement Class from the Settlement Class.

(b)     <u>Delivery to Parties; Certification to the Court</u>.     The Settlement Administrator shall provide copies of the requests for exclusion to the Parties no later than ten (10) days after the opt-out deadline. No later than twelve (12) days before the Final Fairness Hearing, the Settlement Administrator shall file with the Court a declaration verifying that Class Notice has been provided to the Settlement Class as set forth herein and listing all of the valid opt-outs received.

(c)     <u>Effect of Opt-Out</u>. All individuals within the Settlement Class who timely exclude themselves from the Settlement Class will not be eligible to receive any of the benefits of the Settlement but will not be bound by any further orders or judgments in the Action, and will preserve their ability to independently pursue, at their own expense, any claims they may have against TransUnion.

(d)     <u>Unclear Communications from Settlement Class Members</u>. In the event of ambiguity as to whether a Settlement Class Member has requested to be excluded from the Settlement (such as through contradictory submissions to the Settlement Administrator), the Settlement Administrator shall reach out to the Settlement Class Member to attempt to determine his/her intent. If the Settlement Administrator is unable to determine the Settlement Class Member's intent, the Settlement Class Member shall be presumed not to have requested exclusion.

(e)     <u>Right to Withdraw for Excessive Opt-Outs</u>. If the number of exclusion requests exceeds 900, then TransUnion may terminate the Agreement in its sole discretion and the Parties shall be returned to the <u>status quo ante</u> as of April 5, 2021, for all litigation purposes, as if no Settlement had been negotiated or entered into. If TransUnion exercises this right to

declare the Agreement void, then TransUnion shall provide Class Counsel with written notice of this election no later than twelve (12) days before the Final Fairness Hearing.

        8.4    <u>Objections to Settlement</u>.

        (a)    <u>Right to Object</u>.  Any Settlement Class Member may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and litigation expenses and the individual settlement and service award to Class Representative.

        (b)    <u>Deadline</u>.  Not later than forty-five (45) days after the date of the Notice, or sixty (60) days after the date of the Order Directing Notice to the Settlement Class, whichever is later, any objection to the Settlement must be filed with the Clerk of the United States District Court, Eastern District of Pennsylvania, 601 Market Street, Philadelphia PA 19106 (or electronically via the CM/ECF system) and shall be served on Class Counsel and TransUnion's Counsel.

        (c)    <u>Content of Objections</u>.  All objections must include:  (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; (v) the name and address of any attorney who has drafted or helped draft the objection; and, (vi) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

## IX.    FINAL APPROVAL OF SETTLEMENT

    9.1    <u>Final Fairness Hearing</u>.  On a date to be set by the Court, but no later than ten (10) days before the Final Fairness Hearing, the Class Representative will move for entry of the Final Approval Order granting final approval of the Settlement and entering Judgment in the Action. The Final Approval Order shall provide:

        (a)    That the Settlement Class is certified for settlement purposes only;

(b)     That the Class Representative is appointed to represent the Settlement Class;

(c)     That the Class Representative fairly and adequately represents the interests of the Settlement Class;

(d)     That Class Counsel adequately represents Class Representatives and the Settlement Class;

(e)     The Settlement was negotiated at arm's length;

(f)     That the relief provided for the class is adequate, taking into account

(i)     The costs, risks, and delay of trial and appeal;

(ii)     The effectiveness of the method of distributing relief to the Settlement Class;

(iii)     The terms of the proposed award of attorneys' fees including timing of payment;

(iv)     The proposal treats class members equitably relative to each other.

(g)     That the Settlement should be, and is, approved;

(h)     The amount of attorneys' fees and litigation expenses and any individual settlement and service award that may be paid;

(i)     Confirm the opt-outs from the Settlement;

(j)     Overrule any objections;

(k)     Dismiss, on the merits and with prejudice, all claims in the Action, and permanently enjoin each and every Settlement Class Member from bringing, joining or continuing to prosecute against the Released Parties any Released Claims, and enter Judgment thereon; and,

(l)     Retain jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement and the Settlement.

## X.    TERMINATION OF AGREEMENT

10.1    Non-Approval of Agreement.  This Agreement is conditioned upon final approval without material modification by the Court.  In the event that the Agreement is not so approved or the Settlement does not become Final, the Parties shall return to the status quo ante as of April 5, 2021, as if no Agreement had been negotiated or entered into.  No agreements, documents or statements made by or entered into by any Party in connection with this Agreement may be used by the Class Representative, any proposed Settlement Class Member, TransUnion, or any other person to establish liability, any defense and/or any of the elements of class certification in any other proceeding.

10.2    Preservation of Parties' Rights.  Should the Agreement not be finally approved by the Court, the Parties shall be deemed to have preserved all of their rights or defenses as of April 5, 2021, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.  In the event that the Agreement is approved without material modification by the Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from the Agreement and return to the status quo ante as of April 5, 2021, for all litigation purposes, as if no Agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.

## XI.    MISCELLANEOUS PROVISIONS

11.1    Further Assurances.  Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

11.2    Dispute Resolution.  The Parties agree to meet and confer in good faith in regard to any dispute relating to the Settlement or to administration of the Settlement, prior to seeking relief from the Court.  The Parties hereby submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania for the purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

11.3     Entire Agreement.  This Agreement constitutes the entire agreement between and among the Parties with respect to the Settlement.  This Agreement supersedes all prior negotiations and agreements, including without limitation all proposals made by the mediators, all prior drafts of this Agreement and all correspondence relating thereto.  The Parties represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation or warranty whatsoever not contained in this Agreement to induce them to execute the same.  The Parties represent and warrant that they have not executed this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

11.4     Successors and Assigns.  The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Parties.

11.5     Competency of Parties.  The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.

11.6     Authority.  The persons signing this Agreement on behalf of TransUnion warrant and represents that he or she is authorized to sign on its behalf.  The Class Representative has personally signed this Agreement.

11.7     Modification.  No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto and, after the Preliminary Approval Date, with approval by the Court.

11.8     Construction.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Neither the Class Representative nor TransUnion shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.  This Agreement shall be construed and interpreted to effectuate the

intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Parties.

11.9    Invalidity.   Before declaring any provision of this Agreement invalid, illegal or unenforceable for any reason, the Court shall first attempt to construe the provision valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable.   After applying this rule of construction and still finding a provision invalid, the Court shall thereupon interpret the invalid provision to the fullest extent possible to otherwise enforce the invalid provision.   The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

11.10    Governing Law.   All terms of this Agreement shall be governed and interpreted according to the substantive laws of the Commonwealth of Pennsylvania without regard to its choice of law or conflicts of laws principles.

11.11    No Waiver.   The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision.   No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

11.12    Notices/Communications.     All    requests,    demands,    claims    and    other communications hereunder shall: (a) be in writing; (b) be delivered by U.S. Mail; (c) be deemed to have been duly given on the date received; and, (d) be addressed to the intended recipients as set forth below:

If to the Class Representative or the Settlement Class:

James A. Francis, Esq.                          David M. Marco, Esq.
Francis Mailman Soumilas, P.C.                  SmithMarco, P.C.
1600 Market Street, Suite 2510                  55 West Monroe Street, Suite 1200

DocuSign Envelope ID: 534951AA-FF6D-449C-86AC-5663688C0154

Philadelphia, PA 19103                    Chicago, IL 60603
Fax:  (215) 940-8000                      Fax:    (888) 418-1277

If to TransUnion:

Samantha L. Southall
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19106
Fax: (215) 665-8760

Each of the Parties may change the address to which requests, demands, claims or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

11.13   Counterparts.  This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement.  For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Photocopies of executed copies of this Agreement may be treated as originals.

[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

Agreed and accepted:

Dated:  June 10, 2021

_Kimberly Deaton_____
Kimberly Deaton

Approved as to form and content:

Dated:  June ___, 2021

FRANCIS MAILMAN SOUMILAS, P.C.


By:  _____
James A. Francis
Attorneys for Class Representative
and the Settlement Class

Agreed and accepted:

Dated:  June ___, 2021

_____
Kimberly Deaton

Approved as to form and content:

Dated:  June 14, 2021          FRANCIS MAILMAN SOUMILAS, P.C.

By:  _____
James A. Francis
Attorneys for Class Representative
and the Settlement Class

DocuSign Envelope ID: 534951AA-FF5D-449C-86AC-F663688C0154

Agreed and accepted:

Dated:  June <u>11</u>, 2021                     TRANSUNION, LLC

                                               By: _____
                                                    *Lisa Dickens*
                                                   ——6D47E0D4FFB4FDE—
                                               Name: Edgar Dickens
                                               Title: Vice President, Consumer Operations


Approved as to form and content:

Dated:  June ___, 2021                     BUCHANAN INGERSOLL & ROONEY, PC


                                               By: _____
                                                   Samantha L. Southall
                                                   Attorneys for TransUnion LLC

Agreed and accepted:

Dated:  June ___, 2021                    TRANSUNION, LLC


                                          By: _____
                                               Name:
                                               Title:



Approved as to form and content:

Dated:  June 11, 2021                     BUCHANAN INGERSOLL & ROONEY, PC


                                          By:
                                               _____
                                               Samantha L. Southall
                                               Attorneys for TransUnion LLC